UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
         v.                 )    CRIMINAL NO. 10-10067-WGY
                            )
BENJAMIN MICHAUD            )

<u>DEFENDANT'S SENTENCING MEMORANDUM</u>

The defendant, Benjamin Michaud, respectfully requests that this Court impose a sentence of 84 months. Under the circumstances of this case, which include: (1) substantial overstatement of the seriousness of Mr. Michaud's criminal history by the operation of the career offender guideline, and (2) the personal history and character of Mr. Michaud, 84 months is a sentence that is sufficient but not greater than necessary.

**<u>BACKGROUND</u>**

The instant offense occurred on January 4, 2010. On that date, Mr. Michaud ("Michaud") participated in an armed bank robbery with co-defendant Craig Sparks ("Sparks") at the Bank of America ("the Bank") in Waltham, Massachusetts. Michaud and Sparks entered the bank waving what police later determined to be BB guns and made off with a little over $10,000.00 in cash. Presentence Report ("PSR") ¶ 12. After switching cars at a particular location in Waltham, Michaud and Sparks were pulled over by the Massachusetts State Police on Route 95/128 in the Lexington, Massachusetts area.

After the car stop occurred, Michaud and Sparks fled into the woods and ran in different directions. Sparks was not

arrested on January 4, 2010 but the Lexington Police eventually found and arrested Michaud in a nearby residential area.  The Probation Department has determined that Mr. Michaud qualifies as a career offender and that his guidelines sentencing range is 188-235 months.  PSR ¶ 120.

1.  <u>Mr. Michaud's Personal History</u>.

Mr. Michaud is 33 years old and was born and raised in Quincy, Massachusetts.  He is the son of Kenneth and Deborah Michaud.  Mr. Michaud attended and graduated from Fitchburg High School.  He attempted to continue in his education at the Mount Wachusett and Bunker Hill Community Colleges studying business administration.

Throughout his adult life Mr. Michaud has struggled with substance abuse and it has been the major cause for his criminal history.  The "career offender" designation is reserved for a specific subset of repeat violent criminal offenders who consistently commit crimes over the course of years of their lives.  Although Mr. Michaud has been tagged with this moniker, it is only because of two prior offenses which are related, not separated by an intervening arrest and would have been considered as one case prior to a 2007 amendment to U.S.S.G. § 4A1.2(a)(2).

Further, this Court has evidence before it that Mr. Michaud is not an incorrigible and hopeless "career offender."  Moses

-2-

"Max" Khazam testified at the suppression hearing in this case regarding his encounter with Mr. Michaud.  It is this interaction that clearly demonstrates Mr. Michaud is still capable of acting civilly and with compassion.

2.   Mr. Michaud's Criminal History.

Mr. Michaud's last and most serious scoreable criminal offenses occurred in 2002 when he was 24 years old.  PSR ¶¶ 51-52.  This was a drug-fueled string of three robberies that occurred within a 24-hour period in April of that year.  As will be explained in more detail below, these robberies took place along a stretch of Route 9 that includes the border between Middlesex and Worcester Counties here in Massachusetts.

The Probation Department has calculated that Mr. Michaud has 12 criminal history points and that, absent his designation as a career offender, would place him in criminal history category V. But for his qualifying as a career offender, Mr. Michaud's advisory guidelines sentence range as suggested by U.S.S.G. ¶ 2B3.1 would be 84 - 105 months (total offense level 23; criminal history category V).[1]

---

[1]The defendant objected to the assertion in the PSR that a four level enhancement was in order because a dangerous weapon was "otherwise used" during the commission of the offense.  The defendant maintains that the conduct described in the offense summary suggests that he and the co-defendant "brandished" what appeared to be handguns to the customers and employees of the bank.  See U.S.S.G. § 1B1.1, Application Note 1©.  The offense summary does not state that the BB gun(s) were pointed at any

## ARGUMENT

The Sentencing Guidelines no longer bind the Court.  <u>United States v. Booker</u>, 125 S.Ct. 738 (2005).  Instead, under 18 U.S.C. § 3553(a), the Court should impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of

---

specific person or that they came into physical contact with anyone.

The definitions of "brandishing" and "otherwise use" in the guidelines are largely unhelpful.  <u>United States v. Hernandez</u>, 106 F.3d 737, 741 (7th Cir.1997).  The term "brandished" means that "all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person." U.S.S.G. § 1B1.1, comment (n.1©). By contrast, the guidelines define "otherwise use" as "conduct [that] did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." U.S.S.G. § 1B1.1, comment (n.1(I)).  Pointing a weapon at a specific victim creating a personalized threat of harm has been held to warrant the "otherwise use" enhancement. <u>See</u> <u>United States v. Warren</u>, 279 F.3d 561, 563 (7th Cir.2002); <u>United States v. Taylor</u>, 135 F.3d 478, 483 ((7th Cir. 1998). Conversely, brandishing typically occurs where a defendant generally displays a weapon or points the weapon at a group of people rather than a specific individual.  <u>See</u> <u>Hernandez</u>, 106 F.3d at 741 (noting the difference between "pointing or waving about a firearm and leveling the weapon at the head of a victim").  In this case, the summary of the offense conduct describes the defendant and co-defendant entering the bank displaying what appeared to be handguns.  They addressed the customers and employees of the bank as a group while waving the BB gun(s) and stated "Get on the floor, this is a robbery! Get on the floor or I will shoot you!" in order to intimidate the crowd and complete the offense.  There is no evidence that the defendant or co-defendant leveled a BB gun at a particular employee that was accompanied by a verbal threat.  As such, this set of facts fits more closely with the definition of a dangerous weapon being "brandished" as opposed to "otherwise used."  As such, a 3 level enhancement under U.S.S.G. § 2B3.1(b)(2)(E).

sentencing set forth in Section 3553(a)(2).  In so doing, a
sentencing court "may not presume that the Guidelines range is
reasonable" but instead must, using the factors set forth in §
3553(a), "make an individualized assessment based on the facts
presented."  Gall v. United States, 128 S.Ct. 586, 596 (2007).

    The First Circuit elaborated on the meaning and breadth of
the so-called parsimony principle in United States v. Yonathan
Rodriguez, 527 F.3d 221 (1st Cir. 2008).  In Rodriguez, the First
Circuit stressed that the Supreme Court ruling in Kimbrough
requires a "more holistic inquiry" and that "section 3553(a) is
more than a laundry list of discrete sentencing factors; it is,
rather, a tapestry of factors, through which runs the thread of
an overarching principle."  Id. at 228.  That overarching
principle is to "impose a sentence sufficient but not greater
than necessary."  Id.  In reaching a decision on what constitutes
an appropriate sentence, the district court should "consider all
the relevant factors" and "construct a sentence that is minimally
sufficient to achieve the broad goals of sentencing."  Id.
(Emphasis added).

    In this case, the career offender guideline of 188 - 235
months should be given minimal weight in determining the sentence
Mr. Michaud receives.  Instead, this Court should look to the
non-career offender guideline range of 84- 105 months and his

full and complete character.  Each of these factors militates

that 84 months represents the appropriate sentence.

A.    The Career Offender Guideline Substantially Overstates Mr.
      <u>Michaud's Criminal History and his likelihood of recidivism</u>.

      Mr. Michaud does not dispute that his prior state superior

court convictions subject him to the career offender provision of

the Sentencing Guidelines. However the outcome here is at odds

with the spirit of the enhancement as described by the United

States Sentencing Commission. Moreover, the First Circuit has

recently given district court's broad discretion to question and

ameliorate the career offender guideline range where, as here,

the consequences of the enhancement's application are harsh,

unsupported by past sentencing practices, and lead to a result

inconsistent with the sentencing goals expressed in 18 U.S.C. §

3553(a).  <u>United States v. Martin</u>, 520 F.3d 87, 88-96 (1st Cir.

2008) (approving 91 month downward variation from career offender

guideline; "<u>Kimbrough</u> . . . opened the door for a sentencing

court to deviate from the guidelines in an individual case even

though that deviation seemingly contravenes a broad policy

pronouncement of the Sentencing Commission."). <u>See</u> <u>also</u> <u>United</u>

<u>States v. Boardman</u>, 528 F.3d 86, 87-88(1st Cir. 2008)(remand to

district court to consider whether a further variance from career

offender guideline appropriate in light of district court's pre-

Kimbrough comments that it would impose 33 month sentence if it could).[2]

Review of policy decisions and sentencing data collected by the Sentencing Commission reveals that the career offender guideline range to be applied to a defendant with Mr. Michaud's criminal history does not incorporate the purposes and factors set forth in § 3553(a) that ensure fair, efficient and effective sentences.  Most glaringly, the career offender guideline includes no flexibility to permit consideration of offender characteristics.  In the Sentencing Reform Act of 1984 (SRA), Congress directed the Sentencing Commission to assure that the purposes of sentencing set forth in § 3553(a)(2) (just punishment, deterrence, incapacitation as needed to protect the public, and needed education or treatment in the most effective manner) were met by reflecting advancements in knowledge of human behavior, minimizing the likelihood of prison overcrowding, avoiding unwarranted disparities while ensuring sufficient flexibility to permit individualized sentences.

---

[2] The United States Government has conceded and agreed that district courts are free to disagree with the career offender guideline.  See Govt. Response To Petition for a Writ of Certiorari in Vazquez v. United States, Supreme Court Docket Number 09-5370; attached as Exhibit C.  In Vazquez, the Solicitor General requested that the petition be granted and conceded that district courts are free to disagree with the career offender guideline based on a policy basis.  Id. at pp. 7, 13.

The Sentencing Commission, however, decided that the only offender characteristic that would be included in the calculation of the guideline range would be an aggravating one - criminal history.  Yet, the principal source of legislative history for the SRA suggests numerous situations in which offender characteristics should be relevant, and emphasizes that "the Committee decided to describe [some of] these factors  as 'generally inappropriate,' rather than always inappropriate, . . . in order to permit the Sentencing Commission to evaluate their relevance, and to give them application in particular situations found to warrant their consideration."  S. Rep. No. 98-225, 98th Cong., 1st Sess. 172-175 (1984).  No other offender characteristics have been added, though the Commission's research demonstrates that age, current or previous marriage, employment history, educational level, abstinence from drug use, first offender status, and being a drug or fraud offender all predict a reduced risk of recidivism.  Instead, the Commission in promulgating and amending sentencing guidelines such as the career offender guideline has prohibited, discouraged or restricted most offender characteristics even as grounds for a downward departure, contrary to past practice and beyond what Congress directed.  Not surprisingly, most judges surveyed in 2002 said that the guidelines infrequently met the goal of maintaining sufficient flexibility to permit individualized

sentences, or of providing needed training, care or treatment in the most effective manner.  U.S. Sentencing Commission, Survey of Article III Judges on the Federal Sentencing Guidelines, Chapter II, available at http://www.ussc.gov/judsurv/judsurv.htm.

In addition to the ability to vary from the career offender guideline after consideration of the statutory factors mention in Section 3553(a), this Court can also avoid an unreasonable outcome via a traditional sentencing departure.  Under U.S.S.G. § 4A1.3(a)(1), the Sentencing Commission recognized the flaws of the criminal history scoring system and encourages departures where "reliable information" indicates that the criminal history category "significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes."  See, e.g., United States v. Taylor, 843 F.Supp 38 (W.D. Pa. 1993); United States v. Senior, 935 F.2d 149, 151 (8th Cir. 1991).

Here, the above considerations, as applied to this case, warrant this Court giving limited, or no, consideration to the career offender guideline range.  The offenses cited in paragraphs 51 and 52 of the PSR are the predicates required for application of the enhancement.  These offenses are comprised of three incidents that occurred within a 24 hour span along a two mile stretch of Route 9 that, unfortunately for Mr. Michaud, contains the border of Middlesex and Worcester counties.  These

robberies were "related" in that they were part of a common scheme or plan to obtain money for drugs.  They were committed by a drug-dependent 24 year old within hours of each other and in the same manner (note passed to a bank teller, a gas station attendant, and a dry cleaners cashier demanding money). Up until that point in his life, Mr. Michaud had no serious criminal record.

Because one of these robberies occurred about two miles from the other two and across a county border, both Middlesex and Worcester police became involved.  Mr. Michaud was arrested and confessed to all three incidents.  However, he was charged in two separate indictments due to the geographic, and thus jurisdictional, separation of the counties involved.

When the cases were resolved, sentencing occurred on different dates.  See PSR ¶¶ 51,52.  However, the attorneys involved in these matters coordinated their efforts to package or consolidate the outcome as much as possible under the circumstances.  The pertinent records confirm that the sentences were ordered to run concurrent with each other.  Ironically, at the present time Mr. Michaud is faced with a severe sentencing enhancement because of these matters despite the state courts and attorneys efforts to treat these three incidents as one for purposes of his sentencing back in 2003.

U.S.S.G. § 4A1.2(a)(2) provides that:

> Prior sentences always are counted separately if the
> sentences were imposed for offenses that were separated by
> an intervening arrest (i.e., the defendant is arrested for
> the first offense prior to committing the second offense).
> If there is no intervening arrest, prior sentences are
> counted separately unless (A) the sentences resulted from
> offenses contained in the same charging instrument; or (B)
> the sentences were imposed on the same day.  Count any prior
> sentence covered by (A) or (B) as a single sentence.

This section was amended in 2007.  Prior to the amendment, the
provision read:

> Prior sentences imposed in unrelated cases are to be counted
> separately.  Prior sentences imposed in related cases are to
> be treated as one sentence . . . .

Prior to 2007, the Application Notes defined "related cases" as
follows:

> Prior sentences are not considered related if they were for
> offenses that were separated by an intervening arrest (i.e.,
> the defendant is arrested for the first offense prior to
> committing the second offense).  Otherwise, prior sentences
> are considered related if they resulted from offenses that
> (1) occurred on the same occasion, (2) were part of a single
> common scheme or plan, or (3) were consolidated for trial or
> sentencing.

This amendment was made in order to avoid continued

sentencing litigation regarding "consolidation" of cases, etc.

Since the Amendment, defendants who were sentenced under the old

provision and whose convictions were counted separately, have

appealed claiming that their sentences would be counted together

under the new provision.  Although the amendment is non-

retroactive, the First Circuit has remanded cases where it was

clear that the convictions would be counted separately under the

old system and jointly under the new, to allow the sentencing

-11-

judge to consider, under <u>Gall</u>, the Guidelines policy change and
how it might impact sentencing.  <u>See</u>, e.g., <u>United States v.
Ahrendt</u>, 560 F.3d 69, 78-80 (1st Cir. 2009).  Mr. Michaud is in
the opposite position.  His convictions would probably have been
counted together under the old standard, but, as is explained in
the PSR, are counted separately under the new one.

Applying the old standard, the offenses were not separated
by an intervening arrest, they occurred on the same day and they
were part of a single crime spree.  Prior to the amendment, the
First Circuit required that:

> [A]t least in respect to offenses that are temporally and
> factually distinct (that is, offenses which occurred on
> different dates and which did not arise out of the same
> course of conduct), charges based thereon should not be
> regarded as having been consolidated (and, therefore,
> 'related') unless the original sentencing court entered an
> actual order of consolidation or there is some other
> persuasive indicium of formal consolidation apparent on the
> face of the record which is sufficient to indicate that the
> offenses have some relationship to one another beyond the
> sheer fortuity that sentence was imposed by the same judge
> at the same time.

<u>United States v. Correa</u>, 114 F.3d 314, 317 (1st Cir. 1997).  Even
assuming that Mr. Michaud falls into the category of cases that
are temporally and factually distinct (which it seems that he
does not), there are indications in the records available that
the offenses were related.  Although the offenses were charged in
Middlesex and Worcester counties and could not be consolidated,
the sentences run concurrent and each of the sentences references

the other.  <u>See</u> PSR ¶¶ 51,52.  Therefore, under the old standard, the offenses would likely have been counted together.  Under the new standard, Mr. Michaud passes the test in the first sentence—there was no intervening arrest.  However, the second sentence provides that offenses not separated by an intervening arrest are counted separately unless they were not based on the same charging instrument or the sentences were imposed on the same day.  Mr. Michaud cannot meet either of these conditions—his cases were charged separately and were not sentenced on the same day due to a geographic glitch.  Therefore, under the plain language of the amended guideline, the offenses should be counted separately.

Simply put, this Court has the discretion to depart or vary from the career offender range and achieve the same result as treating the offenses listed in paragraphs 51 and 52 of the PSR as one incident in order to render a sentence that is fair under the circumstances.  If these cases are practically viewed as one incident, Mr. Michaud's record does not fit the profile of a "recidivist offender for whom a lengthy term of imprisonment is appropriate."  U.S.S.G. § 4B1.1 *Background*.  Moreover, that record, including the nature and seriousness of his prior offenses, would not put him in that category of "certain 'career' offenders" who should receive a sentence of imprisonment "at or near the maximum term authorized."  <u>Id</u>.

Using the career offender guideline as a starting point in determining an appropriate sentence in this case unjustifiably skews Mr. Michaud's sentence and leads to a sentence that is greater than necessary.  In this case, the career offender range is generated not by a recognized pattern of repeated violent criminal behavior over a significant span of time but by the happenstance of crossing a county border within a period of 24 hours.  Under these circumstances, this Court should more properly utilize the non-career offender guideline range in determining an just sentence for Mr. Michaud.  A sentence of 84 months adequately reflects these considerations.

B.    <u>Mr. Michaud's Personal History and Future</u>.

Mr. Michaud is a 33-year-old lifetime resident of Massachusetts whose decision to rob a bank with Craig Sparks in the offense at issue was wholly irresponsible and the product of a life-time of substance abuse and inability to obtain and maintain legitimate employment.  In the years leading up to the instant offense, Mr. Michaud was serving a state prison sentence which, quite frankly, failed to provide him with the tools he needed to fight his drug addiction and lead a law-abiding life. His decision to engage in this conduct shortly after his release from Massachusetts state prison is a sad commentary on the

failure of lengthy jail sentences to truly and meaningfully rehabilitate.

Having said all of these things, Mr. Michaud is not a lost cause. A true picture of who he is becomes clear as one listens to the comments of Moses "Max" Khazam in relation to his encounter with Mr. Michaud on the day he committed the robbery. Mr. Khazam was at his home in Lexington when Mr. Michaud knocked on his door after attempting to elude the local police. He asked Mr. Khazam for a ride to the Burlington Mall to meet his girlfriend and stated that he had been in an accident to explain his disheveled appearance. He never threatened Mr. Khazam and acted in a courteous manner.

Mr. Khazam felt at ease with Mr. Michaud and genuinely believed he was helping a less fortunate individual with a short ride to the local mall. Mr. Khazam was emphatic to federal investigators when questioned about the incident that he was never threatened and that Mr. Michaud was polite during their entire interaction. These are not the actions of a repeat, violent offender. In fact, they prove, without question, that Mr. Michaud can control his behavior and that his aim is not to harm anyone needlessly.

Lastly, the Court should note that Mr. Michaud suffers from a number of chronic physical problems.  He is an asthmatic and has been diagnosed with irritable bowel syndrome and Hepatitis C. All of these points emphasize that Mr. Michaud is a flawed and fragile human being.  He is also capable of acting like a decent human being despite having committed such a serious offense.

## CONCLUSION

For the foregoing reasons, Mr. Michaud respectfully submits and requests that the Court impose a sentence of 84 months. Certainly, such a sentence, in light of all Mr. Michaud's history and characteristics, is sufficient to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A). The sentence is a lengthy one despite the request for a variance or departure, but it is a punishment that also recognizes the need for, and society's interest in, Mr. Michaud returning to a law-abiding life.

BENJAMIN MICHAUD
By his attorney,


/s/Oscar Cruz, Jr.
Oscar Cruz, Jr.
  B.B.O. #630813
Federal Defender Office
51 Sleeper St., 5th Floor
Boston, MA  02210
Tel: 617-223-8061

<u>CERTIFICATE OF SERVICE</u>

I, Oscar Cruz, Jr., hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on January 27, 2011.


<u>/s/Oscar Cruz, Jr.</u>
Oscar Cruz, Jr.